E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Chief, Environmental Crimes and Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental Crimes and Consumer Protection Section
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Public Corruption and Civil Rights Section
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorney
Environmental Crimes and Consumer Protection Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3359/8644/3819/0304
     E-mail:  Mark.A.Williams@usdoj.gov
              Matthew.O'Brien@usdoj.gov
              Brian.Faerstein@usdoj.gov
              Juan.Rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JERRY NEHL BOYLAN, <br><br> Defendant. | CR No. 22-482-GW <br><br> <u>MOTION FOR A FINDING OF LEGISLATIVE FACT THAT THE ALLEGED LOCUS OF THE SEAMAN'S MANSLAUGHTER OFFENSE IS WITHIN THE ADMIRALTY JURISDICTION OF THE UNITED STATES; EXHIBIT 1</u> <br><br> Hearing Date: Oct. 23, 2023 <br> Hearing Time: 8:00 a.m. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, Brian R. Faerstein, and Juan M. Rodriguez, hereby files this Motion for a Finding of Legislative Fact that the Alleged

Locus of the Seaman's Manslaughter Offense is within the Admiralty Jurisdiction of the United States.

This Motion is based upon the attached memorandum of points and authorities, the files and records in this case, the attached exhibit, and such further evidence and argument as the Court may permit.

Dated: October 13, 2023                Respectfully submitted,

                                              E. MARTIN ESTRADA
                                              United States Attorney

                                              MACK E. JENKINS
                                              Assistant United States Attorney
                                              Chief, Criminal Division

                                                  */s/*
                                              MARK A. WILLIAMS
                                              MATTHEW W. O'BRIEN
                                              BRIAN R. FAERSTEIN
                                              JUAN M. RODRIGUEZ
                                              Assistant United States Attorneys

                                              Attorneys for Plaintiff
                                              UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES...................................................i

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I. INTRODUCTION........................................................1

II. ARGUMENT...........................................................2

    A.   The Court should decide jurisdictional status before trial.............................................................2

        1.   Jurisdiction is a question of law for the Court, not for the jury...................................................2

        2.   The jurisdictional status of a place is a legislative fact....................................................6

    B.   The location of the seaman's manslaughter offense is within the admiralty jurisdiction of the United States....7

        1.   The Pacific Ocean is navigable and used for commercial activities................................................7

        2.   Concurrent state jurisdiction does not impact this analysis........................................................8

III. CONCLUSION........................................................9

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                  <u>PAGE</u>

**FEDERAL CASES**

<u>Adams v. Montana Power Co.</u>,
   528 F.2d 437 (9th Cir. 1975) .................................. 2, 8
<u>Bowen v. Johnston</u>,
   306 U.S. 19 (1939) ............................................... 4
<u>Davis v. United States</u>,
   185 F.2d 938 (9th Cir. 1950) ..................................... 3
<u>Hoopengarner v. United States</u>,
   270 F.2d 465 (6th Cir. 1959) ..................................... 9
<u>In re Mission Bay Jet Sports LLC</u>,
   570 F.3d 1124 (9th Cir. 2009) .................................... 8
<u>Jones v. United States</u>,
   137 U.S. 202 (1890) .............................................. 7
<u>Kaiser Aetna v. United States</u>,
   444 U.S. 164 (1979) .............................................. 7
<u>Marshall v. Sawyer</u>,
   365 F.2d 105 (9th Cir. 1966) ..................................... 6
<u>McGirt v. Oklahoma</u>,
   140 S. Ct. 2452 (2020) ........................................... 4
<u>Owino v. Holder</u>,
   771 F.3d 527 (9th Cir. 2014) ..................................... 6
<u>United States v. Allied Towing Corp.</u>,
   602 F.2d 612 (4th Cir. 1979) .................................. 1, 9
<u>United States v. Cook</u>,
   922 F.2d 1026 (2d Cir. 1991) ..................................... 4
<u>United States v. Davis</u>,
   726 F.3d 357 (2d Cir. 2013) ................................... 3, 6
<u>United States v. Gipe</u>,
   672 F.2d 777 (9th Cir. 1982) .................................. 2, 5
<u>United States v. Hernandez-Fundora</u>,
   58 F.3d 802 (2d Cir. 1995) .................................... 5, 7
<u>United States v. Johnson</u>,
   No. 3:17-CR-136-HEH, WL 1023355 at *2 (E.D. Va. Feb. 22, 2018) ... 3
<u>United States v. Levesque</u>,
   681 F.2d 75 (1st Cir. 1982) ...................................... 4
<u>United States v. Love</u>,
   20 F.4th 407 (8th Cir. 2021) ..................................... 3
<u>United States v. McKee</u>,
   68 F.4th 1100 (8th Cir. 2023) .................................... 1
<u>United States v. Mujahid</u>,
   799 F.3d 1228 (9th Cir. 2015) .................................... 4
<u>United States v. Roberts</u>,
   185 F.3d 1125 (10th Cir. 1999) ................................... 4
<u>United States v. Smith</u>,
   282 F.3d 758 (9th Cir. 2002) ..................................... 2

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. Sohappy,
  770 F.2d 816 (9th Cir. 1985) ...................................... 4
United States v. Stands,
  105 F.3d 1565 (8th Cir. 1997) ..................................... 4
United States v. Warren,
  984 F.2d 325 (9th Cir. 1993) ...................................... 3
United States v. Warren,
  984 F.3d 325 (9th Cir. 1993) ...................................... 5

FEDERAL STATUES

18 U.S.C. § 1115................................................. 1, 9
18 U.S.C. § 3236.................................................... 7

FEDERAL RULES

Federal Rule of Evidence 201..................................... 6, 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant JERRY NEHL BOYLAN ("defendant") will soon stand trial on the Indictment alleging that he committed seaman's manslaughter "within the Central District of California and the admiralty jurisdiction of the United States."  The crime in question occurred in the Pacific Ocean off the coast of Santa Cruz Island, an area clearly within the admiralty jurisdiction of the United States.

The seaman's manslaughter statute, 18 U.S.C. § 1115, does not specify whether it was enacted pursuant to Congress's authority to create and modify admiralty law or its power under the Commerce Clause.  However, at least two federal circuits have held that the statute and its reach are defined by admiralty law.  United States v. McKee, 68 F.4th 1100, 1108 (8th Cir. 2023); United States v. Allied Towing Corp., 602 F.2d 612, 615 (4th Cir. 1979).  The government therefore alleged admiralty jurisdiction in the indictment and proceeds on that basis.

Proving the jurisdictional element of defendant's offense entails a bifurcated inquiry involving both a question of law and a question of fact.  The Court decides the legal question of whether the alleged locus of the offense falls within federal jurisdiction, and the jury decides the factual question of whether the alleged crime occurred within that federal locus.  Here, the alleged locus of the offense is the marine region depicted in Exhibit 1, attached hereto.[1]

---

[1] Although much larger regions of the Pacific Ocean could also fall within federal admiralty jurisdiction given the extensive shipping, diving, fishing, and other commercial activities occurring
*(footnote cont'd on next page)*

Admiralty jurisdiction extends "to those waters traversed or susceptible of being traversed by commercial craft." Adams v. Montana Power Co., 528 F.2d 437, 439 (9th Cir. 1975). Here, the region of the Pacific Ocean in question is used by a variety of commercial vessels, ranging from large international container ships to cruise ships to commercial dive boats like the *Conception*.

Accordingly, this Court should make a pre-trial finding of legislative fact that the marine area depicted in Exhibit 1 is within the admiralty jurisdiction of the United States.[2]

## II. ARGUMENT

### A. The Court should decide jurisdictional status before trial

#### 1. Jurisdiction is a question of law for the Court, not for the jury

Whether the United States has jurisdiction over the area where an offense occurred "can and should be decided by the trial court as a preliminary question of law"; by contrast, whether the instant offense took place in that area is the "factual issue" that "must be decided by the jury." United States v. Smith, 282 F.3d 758, 767 (9th Cir. 2002); see also United States v. Gipe, 672 F.2d 777, 779 (9th Cir. 1982) ("the court may determine as a matter of law the existence of federal jurisdiction over the geographic area, but the locus of the offense within that area is an issue for the trier of fact"); Davis v. United States, 185 F.2d 938, 943 (9th Cir. 1950) ("Whether

---

throughout the navigable ocean, the government is limiting its jurisdictional argument in this case to the marine region identified on Exhibit 1.

[2] On October 6 and 10, 2023, the government met and conferred with Deputy Federal Public Defender Joshua Weiss regarding the issues raised in this Motion. DFPD Weiss indicated that he was not prepared to agree that the Court should make a pre-trial finding of legislative fact regarding admiralty jurisdiction.

2

its geographical jurisdiction covers the place of occurrence under consideration is a question within the power of the court to determine, and this is true in a criminal as well as a civil case.").

Determining the existence of federal jurisdiction is purely a legal question for the Court, as it "turn[s] on a fixed legal status that does not change from case to case and involve[es] consideration of source materials (such as deeds, statutes, and treaties) that judges are better suited to evaluate than juries." United States v. Davis, 726 F.3d 357, 368 (2d Cir. 2013).  This purely legal question is ill-suited for a jury, as "[e]ntrusting such a nuanced and cumbersome legal exercise to the trier of fact would leave open the distinct possibility of conflicting decisions as to federal jurisdiction over an identical parcel of property—a status which by its nature either exists or doesn't exist." United States v. Johnson, No. 3:17-CR-136-HEH, 2018 WL 1023355, at *2 (E.D. Va. Feb. 22, 2018).  Such discrepancies would be illogical, because "[w]hether a particular facility is within federal jurisdiction is a universal truth." United States v. Love, 20 F.4th 407, 412 (8th Cir. 2021).

The Ninth Circuit has repeatedly pronounced that the existence of federal jurisdiction is a question of law for the district court, and the locus of the offense within that area is an issue for the jury. See, e.g., United States v. Warren, 984 F.2d 325, 327 (9th Cir. 1993) (whether an army base is within federal jurisdiction may be determined by the district court "as a matter of law," and whether an assault occurred on the base is a question of fact for the jury). Other cases are in accord with this distinction. United States v. Sohappy, 770 F.2d 816, 822 & n.6 (9th Cir. 1985) (whether land lies within Indian country "is a matter for the judge"; the jury "need

only find" that the offense was committed on that land) (citing Gipe, 672 F.2d at 779); accord United States v. Roberts, 185 F.3d 1125, 1139-40 (10th Cir. 1999); United States v. Stands, 105 F.3d 1565, 1575-76 (8th Cir. 1997); United States v. Cook, 922 F.2d 1026, 1031-32 (2d Cir. 1991); United States v. Levesque, 681 F.2d 75, 78 (1st Cir. 1982).[3]

Supreme Court precedent supports that approach. In McGirt v. Oklahoma, 140 S. Ct. 2452 (2020), the Court conducted a survey of historical records to determine whether the defendant had committed his crimes within Indian country. Id. at 2460-67. If the geographical and jurisdictional scope of Indian territory had been a question of fact that had to go to a jury, the Supreme Court could not have undertaken its analysis on appeal. McGirt thus confirms that jurisdiction is a legal question answered by legislative facts. See also Bowen v. Johnston, 306 U.S. 19, 28-30 (1939) (examining cession statutes and administrative opinion letter to conclude that land was within federal territorial jurisdiction).

The legal determination of jurisdiction also applies to crimes in federal prisons. In United States v. Mujahid, 799 F.3d 1228 (9th Cir. 2015), where the defendant committed sexual assaults at a state facility housing federal inmates, the existence of federal jurisdiction—based on an uncontested contract with the state—was a question of law. Id. at 1236-38; accord United States v. Hernandez-Fundora, 58 F.3d 802, 812 (2d Cir. 1995) ("[T]he district court was

---

[3] A bifurcated analysis similarly governs jurisdiction where a defendant contends he is not an Indian: whether a tribe is federally recognized "is a question of law to be decided by the judge"; whether the defendant was a member of that tribe is a question for the jury. United States v. Zepeda, 792 F.3d 1103, 1114 (9th Cir. 2015) (en banc).

4

entitled to determine that [the prison] falls within the special maritime and territorial jurisdiction of the United States, and to remove that issue from consideration by the jury.").

The Ninth Circuit's model instruction for involuntary manslaughter tracks this accepted bifurcated inquiry: the Court identifies the place of federal jurisdiction, and the jury determines whether the assault occurred there. Ninth Cir. Model Crim. Jury Instr. 16.4. The Comment to the Ninth Circuit Pattern Jury Instructions for involuntary manslaughter adopts this clear, practical, easy-to-apply distinction between what is a question of fact and what is a question of law: "As to the sixth element, whether the crime alleged occurred at a particular location is a question of fact. Whether the location is within the special maritime and territorial jurisdiction of the United States or a federal prison is a question of law. See United States v. Gipe, 672 F.2d 777, 779 (9th Cir. 1982)." Id., Comment.

The model instruction for manslaughter contains a similar comment that cites the same Ninth Circuit precedents and endorses the same bifurcated analysis: "As to the third element, whether the crime alleged occurred at a particular location is a question of fact. United States v. Warren, 984 F.3d 325, 327 (9th Cir. 1993). Whether the location is within the special maritime and territorial jurisdiction of the United States, or a federal prison is a question of law. See United States v. Gipe, 672 F.2d 777, 779 (9th Cir. 1982)." Ninth Cir. Model Crim. Jury Instr. 16.3, Comment.

//
//

         2.   <u>The jurisdictional status of a place is a legislative fact</u>

Questions of "geography and jurisdiction," including "whether a particular plot of land falls within the special maritime and territorial jurisdiction of the United States," are answered by "legislative facts," which are "facts or pronouncements that do not change from case to case but apply universally." <u>Davis</u>, 726 F.3d at 366-68. Those are distinguished from "adjudicative facts," which involve case-by-case determinations and may only be judicially noticed within the strictures of Federal Rule of Evidence 201. <u>Id.</u> at 366. Legislative facts are conclusively noticeable; Rule 201 is "inapplicable." <u>Id.</u> at 366-68; <u>see also</u> <u>Owino v. Holder</u>, 771 F.3d 527, 534 n.4 (9th Cir. 2014) (courts "may consider" legislative facts "without regard to Rule 201"); <u>Marshall v. Sawyer</u>, 365 F.2d 105, 111 (9th Cir. 1966) (endorsing distinction between adjudicative and legislative facts). Adjudicative facts are facts "developed in a particular case," <u>Davis</u>, 726 F.3d at 366, "usually answering the questions of who did what, where, when, how, why, with what motive or intent—the types of "facts that go to a jury in a jury case, or to the factfinder in a bench trial." <u>Marshall</u>, 365 F.2d at 111. "Legislative facts," by contrast, "do not usually concern [only] the immediate parties but are general facts which help the tribunal decide questions of law, policy, and discretion." <u>Id.</u> at 111.

Supreme Court precedent confirms this distinction. "Who is the sovereign, de jure or de facto, of a territory, is not a judicial, but a political, question, the determination of which by the legislative and executive departments of any government conclusively binds the judges, as well as all other officers, citizens, and

6

subjects of that government." Jones v. United States, 137 U.S. 202, 212 (1890). Courts are therefore "bound to take judicial notice of the territorial extent of the jurisdiction exercised by the government whose laws they administer" based on "public acts of the legislature and executive," even when "those acts are not formally put in evidence." Id. at 214.

Consistent with these precedents, the existence of federal admiralty jurisdiction over a region of the Pacific Ocean is a legislative fact that this Court can and should find as a matter of law. See Hernandez-Fundora, 58 F.3d at 812 (the jurisdictional status of a federal prison is "premised upon a determination of legislative, rather than adjudicative, facts to which Rule 201 . . . [is] inapplicable").

**B. The location of the seaman's manslaughter offense is within the admiralty jurisdiction of the United States**

    1. <u>The Pacific Ocean is navigable and used for commercial activities</u>

The *Conception* caught fire while anchored approximately 1/4 mile north of Santa Cruz Island in the Pacific Ocean. This location is deemed to be the place where the seaman's manslaughter offense occurred because "[i]n all cases of murder or manslaughter, the offense shall be deemed to have been committed at the place where the injury was inflicted, or the poison administered or other means employed which caused the death, without regard to the place where the death occurs." 18 U.S.C. § 3236.

This marine region is unquestionably within the admiralty jurisdiction of the United States. Federal courts have general subject matter jurisdiction in admiralty cases involving waters that are navigable in fact. Const. Art. III, § 2; Kaiser Aetna v. United

7

States, 444 U.S. 164, 171-72 (1979). The Ninth Circuit has broadly held that navigability for purposes of admiralty jurisdiction includes "those waters traversed or susceptible of being traversed by commercial craft." Adams, 528 F.2d at 439. Accordingly, the Circuit has even extended admiralty jurisdiction to Mission Bay, a small body of water in San Diego that is limited to personal watercraft (like jet skis) and that is adjacent to the Pacific Ocean. In re Mission Bay Jet Sports LLC, 570 F.3d 1124, 1127 (9th Cir. 2009) ("We conclude that the waters where the accident occurred, being subject to tidal influence, meet the definition of 'navigable waters' for purposes of admiralty jurisdiction.").

Here, the region identified in Exhibit 1 is undoubtedly "susceptible of being traversed by commercial craft." Adams, 528 F.2d at 439. The *Conception* itself was a commercial boat that took dozens of paying passengers on dive trips to the Channel Islands, including around Santa Cruz Island (where the fire occurred). Witnesses at trial will also testify that this area of the Pacific Ocean is used by large commercial ships transporting international cargo. Moreover, large cruise ships regularly transit this area.[4] This Court should therefore rule that the marine region identified in Exhibit 1 is within the admiralty jurisdiction of the United States.

    2. <u>Concurrent state jurisdiction does not impact this analysis</u>

Although the State of California may also have some jurisdictional rights to certain areas within the Pacific Ocean, that jurisdiction is not exclusive. The Fourth Circuit conclusively

---

[4] See https://santabarbaraca.gov/things-do/waterfront/cruise-ship-visits

8

resolved this very issue in United States v. Allied Towing Corp., 602 F.2d 612 (4th Cir. 1979). In that case, Allied Towing was convicted of seaman's manslaughter when two employees died in an explosion while welding a tank barge (in violation of Coast Guard regulations) on the Elizabeth River. Id. at 613. Allied Towing appealed the district court's denial of its motion to dismiss for lack of jurisdiction. Id. The government acknowledged that the Elizabeth River was within Virginia's jurisdiction, but argued that the federal government still retains admiralty jurisdiction over the seaman's manslaughter offense. Id. at 614. The Fourth Circuit agreed, holding that 18 U.S.C. § 1115 "reaches homicides committed anywhere within the general admiralty jurisdiction of the federal courts. We therefore hold that the district court had jurisdiction to convict Allied for violating section 1115 on the navigable waters of the Elizabeth River." Id. at 615; see also Hoopengarner v. United States, 270 F.2d 465, 471 (6th Cir. 1959) ("The fact that an offense can be prosecuted at common law in a state court does not oust the maritime jurisdiction of a federal court.").

As with Allied Towing, although the State of California may have concurrent jurisdiction over certain areas near its coastline and offshore islands in the Pacific Ocean, the federal government still has admiralty jurisdiction to prosecute seaman's manslaughter violations in the marine region identified in Exhibit 1.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court make a pre-trial finding of legislative fact that the marine region identified in Exhibit 1 is within the admiralty jurisdiction of the United States.

9