CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JULIA DEIXLER (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JERRY NEHL BOYLAN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JERRY NEHL BOYLAN,<br><br>Defendant. | Case No. 2:22-CR-00482<br><br>**MOTION *IN LIMINE* REGARDING THE ADMISSABILITY OF EVIDENCE AND TESTIMONY; EXHIBIT A** |

Defendant Jerry Nehl Boylan, through his attorneys of record, Deputy Federal Public Defenders Georgina Wakefield, Gabriela Rivera, Julia Deixler, and Joshua Weiss, hereby files this Motion *In Limine* to address various evidentiary issues that are likely to arise in the course of trial.

//

//

//

//

1

1

2    This motion is based upon the attached memorandum of points and authorities,

3 all files and records in this case, and such evidence and argument as may be presented

4 at the hearing on the motion.

5
                                    Respectfully submitted,

6
                                    CUAUHTEMOC ORTEGA
7                                     Federal Public Defender

8

9    DATED: October 29, 2023       By  */s/ Joshua D. Weiss*
10                                     GEORGINA WAKEFIELD
                                    GABRIELA RIVERA
11                                    JULIA DEIXLER
                                   JOSHUA D. WEISS
12                                    Deputy Federal Public Defenders
                                   Attorneys for JERRY NEHL BOYLAN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

The defense files this motion to bring to the Court's attention various evidentiary issues that it anticipates may arise over the next few days of trial. Those are: (1) the scope of permissible testimony to be given by the government's proffered expert witness Sean P. Tortora; (2) two disputed limiting instructions regarding evidence and testimony the government appears likely to elicit this week; and (3) the government's apparent intent to elicit unnoticed evidence of prior bad acts, in violation of Rule 404(b). Each of these issues will be addressed in turn below.

## I. Dispute Regarding the Scope of Sean P. Tortora's Testimony

At the pretrial conference on October 12, 2023, the Court requested the defense file supplemental briefing on its three primary concerns regarding the admissibility of Captain Sean P. Tortora's expert testimony. On October 19, 2023, the Defense filed supplemental briefing raising its three primary concerns. Dkt. No. 243. The Government filed its response on October 23, 2023. Dkt. No. 267. The defense anticipates that Captain Tortora is likely to testify this week.

## II. Two Disputed Limiting Instructions

The parties filed briefing regarding two disputed limiting instructions at Dkt. No. 246. The first is an instruction proposed by the defense regarding simulations and demonstrations that expert witnesses from the ATF are likely to present to the jury. *Id.* at 1. The government opposes the proposed limiting instruction, and both parties have briefed their positions. *Id.* at 1-4. The defense anticipates that the ATF experts will testify this week.

The second disputed limiting instruction concerns Coast Guard regulations that are likely to be proffered during the trial. At the pretrial conference on October 12, 2023, the Court stated that it would provide a limiting instruction "at the time the first

1

regulation is proffered" and again with the final jury instructions. Dkt. No. 223 at 58-59. The parties subsequently submitted different proposed versions of this limiting instruction, along with briefing regarding their respective proposals. Dkt. No. 246 at 39-44.

### III. The Government's apparent intent to elicit unnoticed evidence of prior bad acts, in violation of Rule 404(b)

The government has indicated it intends to call as a witness Mark Copple, a former passenger on the *Conception*. It has also provided to the defense notes from an interview an FBI agent and one of the government's attorneys conducted with Mr. Copple on October 17, 2023. (*See* Ex. A.) The interview notes indicate that the government may attempt to elicit two areas of testimony from Mr. Copple that are prohibited by Rule 404(b) and this Court's prior rulings.

**A. Testimony about an alleged incident when the escape hatch on the *Conception* was covered by a cooler is inadmissible under Rules 404(b) and 403**

The interview notes state that on some undated trip on the *Conception* (not the accident trip), Mr. Copple saw that the emergency escape hatch in the salon was covered by a cooler, and that he told Mr. Boylan about the issue. (Ex. A at 2.) The interview notes further state that Mr. Copple said that Mr. Boylan stated that there was not another good place to store the cooler. (*Id.*) Testimony about this alleged incident is inadmissible for three reasons.

First, the government has not provided notice to the defense, as required by rule 404(b), of its intent to elicit evidence of this prior act "so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(a). Nor has it "articulate[d]" a "permitted purpose for which the prosecutor intends to offer the evidence and the

2

1 reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B).  This testimony of an
2 alleged prior wrong or act is inadmissible for this reason alone.
3      Second, testimony about the cooler incident would be inadmissible even if the
4 government had complied with the Rule's notice requirement—it is pure propensity
5 evidence that falls squarely within the prohibitions of Rule 404(b).  The Ninth Circuit
6 has "repeatedly emphasized that extrinsic act evidence is not looked upon with favor,"
7 due to "the underlying premise of our criminal system, that the defendant must be tried
8 for what he did, not for who he is." *United States v. Vizcarra-Martinez*, 66 F.3d 1006,
9 1013-14 (9th Cir. 1995) (citing *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir.
10 1993)); *see also United States v. Garcia-Orozco*, 997 F.2d 1302, 1304 (9th Cir. 1993)
11 (citing *United States v. Hodges,* 770 F.2d 1475, 1479 (9th Cir. 1985)) (instructing that
12 "[t]he use of evidence pursuant to this rule 'must be narrowly circumscribed and
13 limited.'").  Guided by this concern, the Ninth Circuit has crafted a four-part test for
14 404(b) admissibility under which "evidence of prior acts and crimes must: (i) prove a
15 material element of the crime currently charged; (ii) show similarity between the past
16 and charged conduct; (iii) be based on sufficient evidence; and (iv) not be too remote in
17 time." *See, e.g.*, *United States v. Hinton*, 31 F.3d 817, 822 (9th Cir. 1994), *cert. denied*
18 513 U.S. 1100; *see also United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021).  It is
19 the government's burden to satisfy these four criteria. *United States v. Benavides*, 40 F.
20 App'x 418, 419 (9th Cir. 2002).  To meet its burden, the government must articulate a
21 relevant "*non-propensity* purpose" for the offered evidence.  Advisory Committee
22 Notes, 2020 Amendment.
23      The government has not offered any non-propensity basis to elicit alleged
24 evidence that Mr. Boylan once (at an unknown date) allowed the safety hatch to be
25 covered by a cooler.  Nor could it.  This alleged other act has nothing to do with the
26 *Conception* tragedy.  There is no evidence whatsoever that the safety hatch was covered
27 or inaccessible on the night of the accident; to the contrary, Michael Kohls testified at
28

trial that he could see the hatch during the fire but was unable to access it because of the intensity of the flames. The only reason the government might introduce this evidence would be to argue that Mr. Boylan had a generally careless attitude toward passenger safety—that is, that he had an unsafe character. That is precisely the kind of evidence Rule 404(b) does not permit. As this Court previously noted in excluding other character evidence, Mr. Boylan is charged with gross negligence related to the *Conception* accident, not "amorphous gross negligence." *See* Tr. Of Sealed Hrg. (Oct. 12, 2023) at 20. This evidence related to the cooler must be excluded.

Third, the testimony is also inadmissible under Rule 403. Even if evidence of other acts satisfies the four-part test of Rule 404(b), the government also must show that the danger of undue prejudice is outweighed by the probative value of the evidence in view of the availability of other means of proof. *United States v. Arambula-Ruiz*, 987 F.2d 599, 604 (9th Cir. 1993) (citing Fed. R. Evid. 404(b) Advisory Committee's note). The government cannot meet that burden here given how likely the alleged other act is to prejudice the jury against Mr. Boylan for reasons unrelated to the charged offense.

### B. The government should not be permitted to elicit testimony about charging stations on the *Conception*

The notes from Mr. Copple's October 17 interview also address electronic charging stations on the *Conception*. The notes state that during the October 17 interview, Mr. Copple was shown a copy of Government Exhibit 153—an image of electronics charging on the *Conception* that the Court had already excluded from trial by the time of the interview (and that the government has shown to the jury inadvertently). (Ex. A at 1-2.) Mr. Copple also discusses how electronics were charged on his *Conception* trips during the interview. (*Id.*) The Court has already stated that testimony regarding electronics charging in the salon of the *Conception* is not admissible, and it has repeatedly ruled that Government Exhibit 153 is not admissible. Mr. Copple should not be permitted to testify about these issues.

4

## IV. Conclusion

For the foregoing reasons, Mr. Boylan respectfully requests that the Court address the pending evidentiary issues described above.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 29, 2023      By  /s/ Joshua D. Weiss
GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
JOSHUA D. WEISS
Deputy Federal Public Defenders
Attorney for JERRY NEHL BOYLAN

# Exhibit A

FD-302 (Rev. 5-8-10)

- 1 of 2 -



# FEDERAL BUREAU OF INVESTIGATION

Date of entry   10/18/2023

On 10/17/2023, MARK COPPLE was interviewed via WebEx.  Present during the interview was FBI Special Agent Joseph Hamer and Assistant United States Attorney (AUSA) Matt O'Brien.  After being advised of the identities of the interviewing personnel and the purpose of the interview, COPPLE provided the following information:

[Agent Note: COPPLE was previously interviewed, and that interview was memorialized as Serial 74 of this case file.  Copple was able review this report and noted it was correct minus a minor detail about his employment.  COPPLE was also admonished not to use the term "victim" during his testimony at trial.]

COPPLE was shown a driver's license photo and identified the individual as JERRY BOYLAN.  COPPLE currently works for the United States Forestry Department.  COPPLE retired from the California Air Resource Board (CARB) in 2018.  COPPLE explained his work as "smoke meteorologist" with a focus on the instrumentations used during wildland fires.

COPPLE had been going on trips with Truth Aquatics since approximately 2005 or 2006.  There were years that he went on a couple trips and years that he did not go at all.  COPPLE recalled going on the Vision and the Truth at least one time each and the rest of the trips were aboard the Conception.  COPPLE was friends with the Finstad family and typically booked trips with them.  The Finstad's and COPPLE preferred trips aboard the Conception because of BOYLAN.  BOYLAN was accommodating to the locations that group would want to dive and was easy to get along with.  COPPLE and a friend were supposed to be aboard the Conception on the trip in which the vessel caught fire.  COPPLE and the friend ended up doing a mountain bike trip instead.

COPPLE recalled there always being a lot of items being charged in the salon area, especially when the groups had a lot of photographers.  COPPLE recalled at night the passengers would pile their electronics on top of each other on a ledge near the staircase that led to the bunkroom.  COPPLE was shown a picture of items being charged (Exhibit 153).  COPPLE said he had

| Investigation on | 10/17/2023 | at | Ventura, California, United States (Phone) |
|---|---|---|---|

File #  45-LA-3161932                                                              Date drafted   10/17/2023

by  HAMER JOSEPH P

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

BOYLAN_01254221

seen it three times worse that what was in the photograph.

COPPLE talked to BOYLAN about all the charging and how COPPLE would get up in the middle of night and not see any crew. COPPLE enjoyed being up at night because it was dark, and he liked looking at all the stars. He never saw any crew awake or a patrol. One of COPPLE's fears was that the vessel would drift away. BOYLAN assured COPPLE that it was ok because the vessel had alarms set if the vessel started to drift. BOYLAN showed COPPLE the wheelhouse and how the alarms worked. COPPLE was also concerned about a fire starting because of all the electronics being charged.

COPPLE recalled times when an ice chest was on top of the escape hatch. COPPLE was in the bunkroom and tried to push the escape hatch up but could not move it because of the ice chest. COPPLE spoke to BOYLAN about it and BOYLAN said there was not another good place to store it. It was the passenger's beer and wine. The Conception did not provide alcohol.

When COPPLE boarded the Conception and other vessels prior to a trip he would not see any crew on board. The passengers would get their gear situated and then go to sleep. The vessel would depart and the crew gave the safety brief in the morning after the passengers were awake and they were usually at their first dive location. COPPLE had been on other boats in which they received a safety brief prior to the vessel departing. COPPLE recalled speaking to BOYLAN and others about this and the general response was that they did not want to wake up the passengers.

COPPLE said that Truth Aquatics and the Conception were really good about their dive operations and BOYLAN was really good about taking them to locations that others would not go.