CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JULIA DEIXLER (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JERRY NEHL BOYLAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:22-CR-00482-GW |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL BASED ON ERROR IN LESSER-INCLUDED OFFENSE INSTRUCTION** |
| JERRY NEHL BOYLAN, | **Hearing: 4/15/2024, at 8:00 a.m.** |
| Defendant. | |

Jerry Nehl Boylan, through his attorneys of record, hereby files this reply in support of his motion for a new trial based on an error in the lesser-included offense instruction (Dkt. No. 387).

/ /

1

1    This reply is based upon the attached memorandum of points and authorities, the

2    files and records in this case, and any further evidence and argument as may be

3    presented at the hearing on the motion.

4

5                                    Respectfully submitted,

6                                    CUAUHTEMOC ORTEGA
                                     Federal Public Defender
7

8

9    DATED:  March 28, 2024          By   /s/ Joshua D. Weiss

10                                        GEORGINA WAKEFIELD

11                                        GABRIELA RIVERA
                                          JULIA DEIXLER
12                                        JOSHUA D. WEISS
                                          Deputy Federal Public Defenders
13                                        Attorneys for JERRY NEHL BOYLAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     ARGUMENT .................................................................................................. 1

        A.      This Court was correct in concluding that the charged offense, 18
                U.S.C. § 1115, contains the lesser-included offense of 46 U.S.C.
                § 2302(b) ............................................................................................. 1

                1.      The bulk of the government's briefing gets the categorical
                        analysis exactly backward ................................................... 1

                        i.      As the government agrees, the issue is whether "it is
                                impossible to commit the greater without first having
                                committed the lesser" ............................................. 2

                        ii.     The government gets the analysis backward by arguing
                                that that it is possible to commit the lesser offense without
                                also committing the greater ..................................... 3

                2.      It is perplexing that the government continues to challenge the
                        Court's ruling that gross negligence is an element of
                        Section 1115 ...................................................................... 6

                3.      The government fails to show that a captain can commit the
                        greater offense without also committing the lesser ........................... 7

        B.      The Court erred by excluding the roving patrol allegation from the
                lesser-included offense instruction............................................. 10

                1.      The government essentially asks this Court to enter a directed
                        verdict on the causation element of the charged offense................ 11

                2.      The government is wrong that no rational jury could find a
                        defendant acted with gross negligence but did not cause the loss
                        of life ........................................................................... 15

        C.      Harmless error review does not apply, and, regardless, the government
                cannot carry its burden to prove the error was harmless ........................... 17

III.    CONCLUSION .............................................................................................. 19

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Montana Power Co.*,
   528 F.2d 437 (9th Cir. 1975) ................................................................. 5

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
   513 U.S. 527 (1995) ............................................................................... 5

*Mathis v. United States*,
   579 U.S. 500 (2016) ......................................................................... 7, 8, 9

*Ruiz-Vidal v. Lynch*,
   803 F.3d 1049 (9th Cir. 2015) ............................................................... 8

*Schmuck v. United States*,
   489 U.S. 705 (1989) ................................................................... 2, 3, 6, 7

*United States v. Alexander*,
   106 F.3d 874 (9th Cir. 1997) ................................................................. 7

*United States v. Alvarez*,
   809 Fed. App'x 562 (11 Cir. 2020) (unpublished) ............................... 6, 7

*United States v. Arnt*,
   474 F.3d 1159 (9th Cir. 2007) ............................................................. 17

*United States v. Hernandez*,
   476 F.3d 791 (9th Cir. 2007) ......................................................... *passim*

*United States v. McKee*,
   68 F.4th 1100 (8th Cir. 2023) ............................................................... 5

*United States v. Meckling*,
   141 F. Supp. 608 (D. Md. 1956) ......................................................... 16

*United States v. Medina-Suarez*,
   30 F.4th 816 (9th Cir. 2022) ..................................................... 3, 10, 17

*United States v. Munguia*,
   704 F.3d 596 (9th Cir. 2012) ............................................................... 17

*United States v. O'Keefe*,
   426 F.3d 274 (5th Cir. 2005) ............................................................. 6, 7

# TABLE OF AUTHORITIES

Page(s)

*United States v. Skeet*,
    665 F.2d 983 (9th Cir. 1982) ........................................................10, 15

*United States v. Wells*,
    879 F.3d 900 (9th Cir. 2018) ...........................................................17

**Statutes**

18 U.S.C. § 1115 ............................................................................*passim*

46 U.S.C. § 2302 ...........................................................................*passim*

**Other Authorities**

Wright & Miller, 3 Fed. Prac. & Proc. Crim. § 515 (5th ed.) ..............................2, 3

# I.  INTRODUCTION

The Court was correct to instruct the jury that the charged offense, 18 U.S.C. § 1115, contains the lesser-included offense of 46 U.S.C. § 2302(b).  But the Court erred in excluding the roving patrol allegation from the lesser-included offense instruction.  The government disputes both points—that Section 1115 contains the lesser-included offense, and that an instruction encompassing the entire charge was required based on the facts adduced at trial.  But the government's arguments are unpersuasive.  The Court should order a new trial.

# II.  ARGUMENT

## A. This Court was correct in concluding that the charged offense, 18 U.S.C. § 1115, contains the lesser-included offense of 46 U.S.C. § 2302(b)

The government argues that as a categorical matter, seaman's manslaughter, 18 U.S.C. § 1115, does not contain the lesser-included offense of 46 U.S.C. § 2302(b). But the bulk of the government's arguments get the categorical analysis exactly backward.  And where the government briefly applies the correct test, it fails to rebut the Court's correct conclusion at trial: that Section 1115 contains the lesser-included offense of Section 2302(b), at least as applied to the captain of a vessel.

### 1.  The bulk of the government's briefing gets the categorical analysis exactly backward

As the government agrees, to determine whether the greater offense categorically includes the lesser, the question is whether it is impossible to commit the greater without also committing the lesser.  That is, there is a categorical match if by committing the greater offense, one necessarily also commits the lesser offense.  One can visualize the analysis as follows (with "G" representing the greater offense, and "L" representing the lesser):

$$G \rightarrow L$$

But the bulk of the government's briefing gets the analysis backward.  It argues that the statutes are not a categorical match by giving examples of situations in which someone can commit the lesser offense without also committing the greater.  These arguments address the wrong question, namely whether committing the lesser offense necessarily entails committing the greater:

L → G

The bulk of the government's arguments are premised on this error.  Conducted properly, the categorical analysis shows that the greater offense (Section 1115) contains the lesser (Section 2302(b)).  (*See* Mot. 11-13.)

> i.  **As the government agrees, the issue is whether "it is impossible to commit the greater without first having committed the lesser"**

The Supreme Court has articulated a single test to determine whether a statute contains a lesser-included offense: to be a lesser-included offense, "the lesser must be such that it is impossible to commit the greater without first having committed the lesser."  *Schmuck v. United States*, 489 U.S. 705, 719 (1989) (citation omitted); *see also* Wright & Miller, 3 Fed. Prac. & Proc. Crim. § 515 (5th ed.) ("[A]n offense is a lesser-included offense if it is impossible to commit the greater without also committing the lesser.").  The government agrees that this test controls.  (Opp. 8-9.)

The direction of the categorical analysis is key to understanding the persistent error in the government's arguments.  It must be the case that by committing the greater offense, one necessarily commits the lesser offense (G → L).  It is not the case that by committing the lesser, one also commits the greater (that is, L → G, does not hold).  Thus, for example, the crime of possession of methamphetamine with the intent to distribute contains the lesser-included offense of simple possession, as by possessing with intent, one necessarily commits the lesser crime of mere possession  (that is, G → L holds true).  *See United States v. Hernandez*, 476 F.3d 791, 799-800 (9th Cir.

2

2007).  The inverse is not true: it is not the case that by committing the lesser—simple possession—one also commits the greater of possession with intent to distribute (that is, L → G does not hold).

The same holds true with the primary example the government focuses upon.  As the government notes, "bank larceny [Crime A] is not a lesser-included offense of bank robbery [Crime B] because the larceny statute requires that the prosecution prove the defendant carried away the property and that the property was valued over $1000." (Opp. 8 (quoting Wright & Miller § 515).)  That is, it is possible to commit the greater offense of robbery without also committing the lesser offense of larceny by, for example, robbing less than $1000 (that is, G → L does not hold true).  Larceny is therefore not a lesser-included offense to robbery.

The point here is that the categorical analysis for the lesser-included offense inquiry goes in one direction: to be a lesser-included offense, "the lesser must be such that it is impossible to commit the greater without first having committed the lesser." *Schmuck*, 489 U.S. at 719 (citation omitted).  Stated otherwise, the greater offense cannot apply to a broader set of situations than the lesser offense.  But the inverse is not true; one can commit a lesser offense without also committing the greater.  Indeed, the whole point of instructing a jury on a lesser-included offense is that, in some situations, a jury rationally could find "the defendant guilty of the lesser offense and acquit him of the greater."  *United States v. Medina-Suarez*, 30 F.4th 816, 819-20 (9th Cir. 2022) (cleaned up).  Consequently, the lesser offense can apply to a broader set of circumstances than the greater—indeed, it must.

   ii. **The government gets the analysis backward by arguing that that it is possible to commit the lesser offense without also committing the greater**

The government argues that the offenses here are not a categorical match by giving multiple examples of how one can commit the lesser offense, Section 2302(b),

3

without also committing the greater, Section 1115.  That is, the government argues that

because L → G does not hold, the offenses are not a categorical match.  This gets

analysis backward.  The only relevant question is whether committing the greater

offense, Section 1115, necessarily entails committing the lesser, Section 2302(b)

(whether G → L holds true).

The government focuses on two ways in which the two statutes are purportedly

not a categorical match.  First, it argues that the "'subject' requirement of Section

2302(b) is not a subset of the 'subject' requirement of Section 1115."  (Opp. 10.)  The

government argues, "A person operating a vessel"—the "subject" of the lesser offense

of Section 2302(b)—"is not necessarily a 'captain, engineer, pilot, or other person

employed on any steamboat or vessel'"—which is the subject of Section 1115.

(Opp 10.)  The government then offers examples of how one can commit the lesser

offense without also committing the greater based on this supposed distinction between

the "subjects" of the offenses.  (Opp. 10-12.)  For example, the government argues that

a drunk passenger on a commercial vessel who takes control of the vessel could be

prosecuted for the lesser offense of Section 2302(b), but not the greater of

Section 1115.  (Opp. 11-12.)  The point of all of these example is that if someone is a

"person operating a vessel" who does not qualify as a "captain, engineer, pilot, or other

person employed on any steamboat or vessel," then they can commit the lesser offense

(Section 2302(b)) without also committing the greater (Section 1115)  (Opp. 10-12.)

That is, the government shows that L → G does not hold true.  As addressed above, this

is an irrelevant argument.

Second, the government seems to argue that the definition of federal admiralty

jurisdiction is broader in the context of the lesser offense, Section 2302(b), than with

respect to the greater offense, Section 1115.  (Opp. 12-14.)  Specifically, the

government states that Section 1115 is limited to commercial vessels, but it argues that

Section 2302(b) applies to both recreational and commercial vessels.[1]  (Opp. 12-14.)
Thus, the government argues, a person operating a recreational vessel could be
prosecuted for the lesser offense of Section 2302(b), but not the greater of
Section 1115.  (Opp. 10-11.)  The government then argues that the statutes are not a
categorical match because a crime committed on a recreational vessel could meet the
elements of the lesser offense, but not the greater.  (*See* Opp. 13-14.)  Once again, the
government erroneously argues that there is no categorical match because L → G does
not hold true.

      The government's briefing thus consistently gets the lesser-included test exactly
backward.  It spends many pages showing that someone can commit the lesser offense
of Section 2302(b) without also committing the greater offense of Section 1115.  But
that is irrelevant.  Indeed, the whole point of providing the lesser-included instruction
here was that a jury could have found that Mr. Boylan committed the lesser offense but

_____

      [1] The government's claim that Section 2302(b) applies in both recreational and
commercial settings is incorrect, but the issue is irrelevant for the reasons described
above.  Nonetheless, it bears noting that contrary to the government's claim, defense
counsel did not misrepresent the holding of *United States v. McKee*, 68 F.4th 1100 (8th
Cir. 2023), during trial.  (*Contra* Opp. 12-13.)  At the hearing regarding the lesser-
included offense, defense counsel correctly pointed out that *McKee* held that both
Section 1115 and Section 2302(b) "only apply within the admiralty jurisdiction."  (Dkt.
No. 371, at 58:7-11.)  The defense then argued that federal admiralty jurisdiction
requires that the conduct occurred on a commercial vessel.  (*Id*. at 58:11-13; *see also id*.
at 55-56.)  The government does not dispute that Section 2302(b) requires federal
admiralty jurisdiction, nor does it dispute that *McKee* stands for that proposition.
(*See* Opp. 10); *McKee*, 68 F.4th at 1108.  There is no basis to accuse the defense of
misrepresenting that case during trial.
      The government seems to take issue with the defense's argument that federal
admiralty jurisdiction requires a connection to commerce.  (*See* Opp. 13.)  But that is
black letter law: federal admiralty jurisdiction exists only if the incident occurred on
"navigable waters" and had a "connection to maritime activity," meaning "a potentially
disruptive impact on maritime commerce."  *See Jerome B. Grubart, Inc. v. Great Lakes
Dredge & Dock Co.*, 513 U.S. 527, 534 (1995);  *see also Adams v. Montana Power
Co.*, 528 F.2d 437, 439 (9th Cir. 1975).  The Court's jury instructions in this case
applied this rule.  (Dkt. No. 320 at 5.)  It is perplexing, then, that the government agrees
that the admiralty jurisdiction requirement limits the scope of Section 1115 to
commercial vessels, but disputes that same implication with respect to Section 2302(b).
Regardless, as addressed above, whether or not Section 2302(b) applies more broadly
than Section 1115 is irrelevant to the present dispute.

not the greater.  (*See* Dkt. No. 320 at 6 (final jury instructions stating, "If (1) any of you are not convinced beyond a reasonable doubt that the defendant is guilty of violating 18 U.S.C. § 1115 on any bases other than the failure to provide night watchmen/roving patrols, and (2) all of you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime of violating 46 U.S.C. § 2302(b), you may find the defendant guilty of the lesser crime.").)

The only relevant question is the inverse of the one the government argues, namely whether someone can commit the greater offense without also committing the lesser (that is, whether G → L holds true).  *See Schmuck*, 489 U.S. at 719.

## 2. It is perplexing that the government continues to challenge the Court's ruling that gross negligence is an element of Section 1115

The government notes that two out-of-circuit decisions—*United States v. O'Keefe*, 426 F.3d 274 (5th Cir. 2005), and *United States v. Alvarez*, 809 Fed. App'x 562 (11 Cir. 2020) (unpublished)—concluded that the charged statute, Section 1115, requires "only negligence," not gross negligence.  (Opp. 14.)  The government asserts that under *O'Keefe* and *Alvarez*, Section 1115 would not contain the lesser-included offense of Section 2302(b), since Section 2302(b) unquestionably requires gross negligence.  (Opp. 14.)  The government then argues that it would be unusual for "one District Court" to find that a statute contains a lesser-included offense where "two other Circuits" do not hold that view.  (Opp. 14.)

This is a perplexing argument.  Over a year and a half ago, this Court decided that Section 1115 contains an element requiring the government to prove gross negligence.  (Case No. 2:20-cr-600, Dkt. Nos. 63, 71.)  In so ruling, the Court issued a lengthy, reasoned opinion in which it explained why *O'Keefe* and *Alvarez* are not persuasive, at least in the Ninth Circuit, where extensive precedent compels the conclusion that gross negligence is required.  (*Id.*, Dkt. No. 63 at 2-11 & n.1.)  The government appealed that ruling, and it then voluntarily dismissed its appeal.  (*Id.*, Dkt.

6

No. 83.)  In addition to being correct on the merits, the Court's ruling departing from *O'Keefe* and *Alvarez* is now firmly the law of the case. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'").  The Court should ignore the government's complaints about the implications of the Court's prior ruling.

### 3.  The government fails to show that a captain can commit the greater offense without also committing the lesser

Finally, the government briefly makes one argument that at least addresses the correct test: whether "a defendant could be guilty of violating Section 1115 but not Section 2302(b)." (Opp. at 14-15.)  The government argues that one can be convicted of the greater offense, and not the lesser, because an "engineer," "bartender," or "other person employed" on a vessel could be convicted under Section 1115, even if they were not "operating a vessel," as required for a conviction under Section 2302(b).  (Opp. 15.)  This argument fails because Mr. Boylan was charged under Section 1115 as a "captain"—not an "engineer" or "other person employed"—and Section 2302(b) is a lesser-included offense at least as applied to the "captain" provision of Section 1115.

The government agrees that in assessing whether Section 2302(b) is a lesser-included offense, the Court must apply the "categorical approach" articulated by the Supreme Court in *Mathis v. United States*, 579 U.S. 500 (2016), and its progeny. (Opp. 8.)  As the government notes, this is generally an "elements test." (Opp. 8 (quoting *Schmuck*, 489 U.S. at 716-17).)  But the government leaves out the crucial second step of the *Mathis* analysis—assessing whether the modified categorical approach applies.

*Mathis* explained that, when analyzing "divisible" statutes, courts must apply the "modified categorical approach," under which a court "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and

7

colloquy) to determine what crime, with what elements, a defendant was convicted." *Mathis*, 579 U.S. at 506. "The court can then compare that crime, as the categorical approach commands," to the second statute at issue—here, the lesser-included offense. *See id.*; *cf. Ruiz-Vidal v. Lynch*, 803 F.3d 1049, 1052–54 (9th Cir. 2015) (explaining that California drug laws are divisible, and that a state-court defendant was able to plead guilty to the lesser-included offense of possession, based on an indictment that charged greater offense of distribution, by pleading guilty based on the specific, divisible elements (the specific drug at issue) charged in the indictment).

The "modified categorical approach" applies when a statute is "divisible," meaning that it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis*, 579 U.S. at 505-506. Accordingly, "[t]he first task" for the court in applying the categorical approach to "an alternatively phrased statute is . . . to determine whether its listed items are elements or means." *Id.* at 517. The difference between "elements" and "means" is that elements "must be charged" in an indictment or information, *id.* at 518; they "are what the jury must find beyond a reasonable doubt to convict the defendant, and at a plea hearing, . . . what the defendant necessarily admits when he pleads guilty." *Id.* at 504 (citation omitted).

*Mathis* provides two methods of determining whether the modified categorical approach applies, both of which show that the "captain" provision of Section 1115 is an element to which the modified categorical approach applies. First, *Mathis* explained that a statute may list mere means, as opposed to elements, when it provides non-exhaustive, "illustrative examples" of how to commit some overarching element of the offense. *Id.* at 518. But here, the alternative elements listed in Section 1115—"Every captain, engineer, pilot, or other person employed on any steamboat or vessel"—do not provide a non-exhaustive list; these are the only people to which the statute applies. Moreover, this list of alternatives does not provide an illustration of some broader element; in order to convict Mr. Boylan under Section 1115, the jury had to specifically

find that he was a captain and not that he fit into some broader category.  That he was a captain is therefore an element of the offense.

Second, *Mathis* explained that the indictment and jury instructions will often shed light on whether an alternatively phrased statute lists alternative means or elements.  The Court explained, "[s]uppose, for example, that one count of an indictment and correlative jury instructions charge a defendant with burgling a 'building, structure, or vehicle'—thus reiterating all the terms of [a state] law.  That is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Mathis*, 579 U.S. at 518-19.  "So too if those documents use a single umbrella term like 'premises': Once again, the record would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail." *Id.*  "Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.*

Here, the indictment charged Mr. Boylan with being the "captain" of the *Conception*.  (Dkt. No. 1 at 2.)  And the jury instructions asked the jury to find, as the first element of the offense, that "the Defendant was a captain employed on a vessel." (Dkt. No. 320 at 5.)  The indictment and jury instructions did not list the alternatives provided in Section 1115—they did not allege that Mr. Boylan was the "captain, engineer, pilot, or other person employed" on the *Conception*.  18 U.S.C. § 1115. Instead, both documents "referenc[ed] one alternative term to the exclusion of all others," and the documents thus indicated that "the statute contains a list of elements, each one of which goes toward a separate crime." *Mathis*, 579 U.S. at 518-19.

Section 1115 is thus divisible, meaning that it "list[s] elements in the alternative, and thereby define[s] multiple crimes," and the "modified categorical approach" applies. *Mathis*, 579 U.S. at 505-506.  Because Mr. Boylan was not charged with being

9

an "engineer" or "other employee" on the *Conception*, the government's arguments that Section 1115 is broader than Section 2302(b) with respect to those alternative elements miss the mark.

The government has not made a single argument that Section 1115 is broader than Section 2302(b) when the defendant is charged only as a "captain." For these reasons, and all those articulated in the motion, the government's briefing fails to rebut the Court's correct conclusion at trial: that Section 1115 contains the lesser-included offense of Section 2302(b).

**B. The Court erred by excluding the roving patrol allegation from the lesser-included offense instruction**

The second step of the lesser-included inquiry asks whether "the evidence would permit a jury rationally to find the defendant guilty of the lesser offense and acquit him of the greater." *Medina-Suarez*, 30 F.4th at 819-20 (cleaned up). While the Court was correct that a rational jury could convict Mr. Boylan of the lesser offense and acquit him of the greater—such that the jury was instructed on the lesser offense—the Court erred in excluding the roving patrol allegations from the jury's consideration of the lesser offense. (Mot. 13-25.)

As addressed in the motion, Ninth Circuit "precedent commands that a court 'may not weigh the evidence in determining whether to give a lesser included offense instruction.'" *Medina-Suarez*, 30 F.4th at 821 (quoting *United States v. Hernandez*, 476 F.3d 791, 800 (9th Cir. 2007)). "[R]egardless of the weight of the evidence, a defendant is entitled to a lesser included offense instruction if the evidence would allow a rational jury to convict him of the lesser offense and acquit him of the greater." *Hernandez*, 476 F.3d 791 at 798 (citation omitted). Thus, even where the court "find[s] it difficult to believe" the view of the evidence that would permit a conviction on the lesser offense and an acquittal on the greater, the lesser must be instructed to the jury so long as it is a rational possibility. *United States v. Skeet*, 665 F.2d 983, 987 (9th Cir.

10

1982); *see also Hernandez*, 476 F.3d 791 at 798. If a conviction on the lesser and an acquittal on the greater is a "rational possibility," differentiating between the greater and lesser offenses is "properly a decision for the jury, not for the district court, to make." *Hernandez*, 476 F.3d 791 at 798, 801.

The motion also surveyed multiple cases where the Ninth Circuit agreed with the government that it had presented convincing evidence proving the element differentiating the lesser and greater offenses. (*See* Mot. 15-18.) But in each case, the Ninth Circuit reversed and ordered a new trial because the element differentiating the lesser and greater offenses was disputed at trial and the defense's position was supported by at least *some evidence*, meaning that it was a rational possibility that a jury could convict of the lesser offense and acquit of the greater. (*See* Mot. 15-18.)

Faced with this overwhelming body of caselaw showing that a district court must provide a lesser-included offense so long as any *rational jury* could distinguish between the greater and lesser offenses on the evidence presented, the government simply ignores it. The government instead makes two arguments, each of which asks the Court to weigh the trial evidence in the government's favor, in contravention of Ninth Circuit precedent:

## 1. The government essentially asks this Court to enter a directed verdict on the causation element of the charged offense

First, the government argues that because the *Conception* was a small vessel, "it would not have mattered how frequently a roving patrol circulated." (Opp. 17.) The government does not contest the defense's argument that the trial evidence would permit a rational jury to conclude that a proper roving patrol would have circulated through the vessel only once every hour—that is, with less frequency than the amount of time it took the fire to grow out of control. (*See* Mot. 18-22; Opp. 17-18.) Instead, the government speculates, without any factual support, that anyone awake on the upper or main deck of the vessel would have "noticed the fire almost immediately,"

11

even if they did not circulate around the vessel.  (Opp. 17.)  Thus, the government argues, no rational jury could have viewed the evidence regarding roving patrols and acquitted Mr. Boylan of the greater charge and convicted him of the lesser on the view that the government failed to prove the causation element of Section 1115 beyond a reasonable doubt.  (*See* Opp. 17-18.)

With this argument, the government simply asks the Court to adopt the government's view of the evidence—that is, to do exactly the opposite of what Ninth Circuit precedent commands.  As addressed in the motion, the element that differentiates the greater and lesser offenses here—causation—was hotly contested at trial.  The defense presented extensive arguments in its closing argument showing that it was at least a rational possibility that Mr. Boylan's roving patrol practices did not proximately cause the loss of life.  (Mot. 19-21.)  The government simply ignores these arguments, and essentially asks the Court to issue a directed verdict on the causation element.  But the defense's theory that there was not evidence proving beyond a reasonable doubt that the lack of a roving patrol proximately caused the loss of life was at least a "rational possibility" that was "properly a decision for the jury, not for the district court, to make."  *Hernandez*, 476 F.3d 791 at 798, 801.

To accept the government's position, the Court would have to accept several facts as definitively proven, even though they were disputed or wholly unproven at trial.  For starers, the government flatly asserts that, between rounds of circulating through the vessel, any roving patrol would be stationed in the upper or main deck of the vessel, and not in any of the several compartments below-deck, including the engine room, the lazarette, the shower room, the storage room (referred to by one crewmember at trial as "the banana room"), or in the passenger bunkroom.  (Opp. 17 & n.5.)  The government does not dispute that a patrolman located below-deck, who circulated only once an hour, would not necessarily have prevented the tragedy.  (*See id.*)  But on what basis does the government claim that a patrolman would not have

12

been stationed below deck between hourly rounds?  It cites none.  Nor did it elicit any evidence on this fact at trial.

To the contrary, the government elicited testimony that during a proper night watch, the night watchman could be assigned another "job" while on watch, such as cleaning certain areas or conducting maintenance, to keep the watchman "alert."  (Dkt. No. 352 at 50-51 (testimony of captain David Harvey).)  The jury also heard extensive testimony that the engine room—located below deck—was considered a primary fire hazard on the *Conception* and that it required consistent maintenance; a rational jury could conclude that a proper night watch could spend extensive time between hourly rounds doing maintenance in the engine room.  (*See* Dkt. No. 336 at 89 (crew testimony that engine room had "its own firefighting system"); Dkt. No. 370 at 195 (testimony about daily checks conducted in the engine room).)  The jury also heard extensive evidence about potential fire hazards located in the passenger bunkroom, below deck— such as how cramped it was, the difficulty of accessing the emergency exit, and that it contained old electric wires—which might have led a jury to conclude that a proper roving patrol should have been stationed with the passengers when it was not actively patrolling the vessel.  The government's assumption—crucial to its argument—that a patrolman necessarily would not have been located below deck between rounds is thus unfounded.  Its argument fails on that basis alone.

Furthermore, even accepting the government's unfounded assertion that a proper night watch would have been stationed on one of the two upper decks, one must wonder what basis the government has to posit that any person awake on the vessel would have immediately caught the fire, before it was out of control.  Indeed, the government points to no trial evidence supporting this claim.  For example, none of the government's fire experts testified to this opinion.  The government instead asserts that based on the size of the vessel, it is an indisputable conclusion that *no rational jury* could question under the beyond-a-reasonable-doubt standard that any person awake on

13

the vessel would have prevented the tragedy.  (*See* Opp. 17-18.)  But far from being so well established that it was proven beyond a reasonable doubt, the trial evidence called this assertion into question.  For example, it was not established conclusively where the fire started—the government's fire experts opined that it started in a trashcan outside the salon on the main deck, but also considered the possibility that it might have started inside the salon.  If the fire began in the salon, would a crewmember stationed upstairs, who was awake but only moving around the vessel once an hour, have "noticed the fire almost immediately," as the government claims?  (Opp. 17.)  A rational jury could at least question whether the government proved that point beyond a reasonable doubt.

Additionally, Michael Kohls—the crewmember who first discovered the fire— testified that he first saw the fire while standing in the back doorway leading from the crew quarters to the rear deck of the upper deck.  (Dkt. No. 340 at 15.)  When he first noticed something amiss, he saw only a "glow" when he looked back.  (*Id.* at 15.) Imagining what the government posits to be a proper roving patrol, suppose a crewmember was stationed on the upper deck of the vessel, at the bow, to look forwards and watch for anchor drag or other hazards.[2]  That crewmember would be standing further forward from where Mr. Kohls was when he discovered the fire; to get to the bow of the vessel, Mr. Kohls would have had to walk through the crew quarters, through a doorway, and into the wheelhouse to look out the front of the vessel.  If a crewmember stationed there were tasked with circulating through the vessel once an hour, as the government's expert testified would be reasonable (*see* Mot. 19-20), then why is the government so confident he would have noticed the fire before Mr. Kohls noticed a "glow," by which time the tragedy could not be prevented?  Again, the government points to no evidence supporting its confident assertion.

---

[2] Several witnesses testified that prior to the *Conception* accident, the greatest overnight threat Truth Aquatics captains looked out for when anchored was anchor drag, and that the vessels were equipped with anchor alarms to guard against that possibility.  (*See, e.g.,* Dkt. No. 337 at 84-86.)

14

In short, the government's evidence left many questions for a rational jury, rather than the Court, to resolve in assessing whether the government had proven the causation element of Section 1115 beyond a reasonable doubt.  Even if the Court found the defense's arguments on the causation element "difficult to believe," it was nonetheless error for the Court to decide this factual dispute.  *Skeet*, 665 F.2d at 987 (reversing for failure to instruct on lesser-included offense of simple assault, even though "this Court may find it difficult to believe" a view of the evidence supporting a simple assault conviction); *see also Hernandez*, 476 F.3d at 800 (reversing for failure to instruct on lesser-included because "[e]ven if it is more probable" that the defendant intended to distribute the methamphetamine, "we cannot say that a rational jury could not have" acquitted of that charge and convicted of the lesser offense of simple possession).

> ## 2. The government is wrong that no rational jury could find a defendant acted with gross negligence but did not cause the loss of life

The government also argues that, in a case where lives were in fact lost in an accident, it is impossible for a rational jury to conclude that the defendant acted with gross negligence in a manner that endangered the lives of others (sufficient to establish liability under Section 2302(b)), but that the government failed to prove that his gross negligence caused the loss of life (such that he would not be liable under Section 1115). (Opp. 18-19.)  The government seems to argue that in a case where people did in fact lose their lives, there is no such thing as grossly negligence conduct than endangered life but did not also cause the deaths.  (*See id.*)  This is, frankly, nonsense.

The causation element of Section 1115 establishes a link between the alleged misconduct—the gross negligence—and the result—the loss of life.  As the Court determined at trial, a rational jury could, for example, differentiate between the greater and lesser offenses if it found that Mr. Boylan's practices in training his crew were

15

grossly negligent, and thus endangered the life or property of others as a general matter (thus meeting the elements of the lesser offense), but that his gross negligence did not proximately cause any loss of life because there was nothing a better-trained crew could have done to prevent the loss of life under the particular circumstances here. (*See* Dkt. No. 371 at 87-88.)

That acting with gross negligence that endangers human life does not necessarily entail causing the loss of life is made clear by *United States v. Meckling*, 141 F. Supp. 608 (D. Md. 1956). There, a captain was charged with seaman's manslaughter, under Section 1115, and with a predecessor statute to Section 2302(b), based on his conduct on a voyage in which 14 passengers drowned during a storm. *Id.* at 618. The Court found the evidence insufficient to sustain a conviction under Section 1115 since there was not evidence proving beyond reasonable doubt that the captain's conduct *caused* the loss of life: as the Court concluded, the allegations of the captain's "misconduct, negligence, or inattention" "are only possibilities, or at the most probabilities, so far as the loss of life is concerned" and so could not establish the causation element beyond a reasonable doubt. *Id.* at 620. But the Court found there was sufficient evidence to establish beyond a reasonable doubt that the captain's negligence endangered human life, and it therefore entered a guilty verdict under the predecessor statute to § 2302(b). *Id.* That is, even though lives were lost during the tragedy, the evidence could prove only that the captain's conduct endangered those lives, not that he caused the deaths. The government fails to respond to *Meckling*, or explain why a rational jury here could not reach the same conclusion.[3]

---

[3] The government refers to *Meckling* only to remind the Court that the defense made a mistake in how it characterized that case during trial. (*See* Opp. at 4-5.) The defense apologized to the Court for the error during trial, and that error did not affect the Court's decision to give a lesser-included instruction at trial. (*See* Dkt. No. 371 at 77-78, 81.) The mistake made during trial, while regrettable, does not change the fact that *Meckling* remains highly persuasive for the reasons addressed above.

16

**C. Harmless error review does not apply, and, regardless, the government cannot carry its burden to prove the error was harmless**

Finally, the government argues that any error in the lesser-included instruction was harmless. (Opp. at 21.) This argument fails for two reasons.

First, the Ninth Circuit regularly reverses convictions and orders new trials where it concludes that a district court erred by failing to provide a lesser-included instruction. *E.g.*, *United States v. Medina-Suarez*, 30 F.4th 816, 820–22 (9th Cir. 2022); *United States v. Arnt*, 474 F.3d 1159, 1164–65 (9th Cir. 2007). In both *Medina-Suarez* and *Arnt*, the Court reversed and ordered a new trial once it concluded that the trial court erred—it did not take the further step of asking if the error was harmless. *Medina-Suarez*, 30 F.4th at 820–22; *Arnt*, 474 F.3d at 1164–65. The Court should do the same here.[4]

Second, even if the Court applies harmless-error review, the government has failed to meet its burden to show that the error was harmless. *See, e.g.*, *United States v. Wells*, 879 F.3d 900, 923–24 (9th Cir. 2018) (in conducting harmless-error review of trial errors, the court begins with a "presumption of prejudice" that the government bears the burden of overcoming).[5] During deliberations, the jury sent a note

---

[4] The government is correct that the Ninth Circuit has, at times, reviewed the failure to provide a lesser-included instruction for harmless error. *See, e.g.*, *Hernandez*, 476 F.3d at 801. The Ninth Circuit will need to resolve this conflict in its caselaw, but there are persuasive reasons not to apply harmless-error review. For starters, if the Court finds in the defense's favor on the second step of the lesser-included inquiry—that a rational jury could have acquitted the defendant of the greater offense and convicted him of the lesser—then it has essentially already found the error was not harmless.

[5] If harmless-error review applies to the failure to provide a lesser-included instruction, then it is unclear which standard applies—the one for constitutional errors or the one for non-constitutional trial errors. *See Hernandez*, 476 F.3d at 801 (finding error in lesser-included instruction was not harmless and ordering new trial, but noting the standard the court applies is unresolved). The defense posits that constitutional harmless error review applies, since this was an error in providing essential jury instructions that went to the nature of the offense and its elements. *See United States v. Munguia*, 704 F.3d 596, 603-04 (9th Cir. 2012) ("An error in describing an element of the offense in a jury instruction is harmless only if it is 'clear beyond a reasonable

17

specifically asking if it could consider the roving patrol allegations as part of the lesser-included offense.  (Dkt. No. 326 at 1.)  In addressing the note at sidebar, government counsel admitted, "The jury may be considering the lesser-included charge here."  (Dkt. No. 372 at 49.)  The Court responded, "Obviously, they're considering that."  (Dkt. No. 372 at 49.)  After hearing from counsel, the Court responded to the jury's question in writing, stating: "As to the question: 'does the lesser charge include violation of the roving patrol' 'referencing lines 9-11 of the verdict form and page 5 of [the] jury instructions,' the answer is 'No.'"  (Dkt. No. 326 at 2.)  No further questions were received from the jury, and its guilty verdict was returned shortly after the Court answered the question regarding the lesser offense.  (Dkt. No. 372 at 57-58.)

Given that the jury was considering the lesser included offense, and specifically asked if it could consider the roving patrol allegations as part of that charge, the government cannot carry its burden to show that the Court's refusal to allow it to do so was harmless.  The government's only argument to the contrary is that the defense did not specifically argue about the lesser-included offense in its closing argument. (Opp. 21.)  But the Ninth Circuit rejected a similar argument in *Hernandez*.  There, the Court found that the district court committed reversible error by failing to present to the jury the lesser-included offense of simple possession where the defendant was charged with a distribution offense.  *Hernandez*, 476 F.3d at 799.  The Court reasoned that even though the defense did not present "affirmative evidence that he possessed the methamphetamine for personal use," that did not change the analysis since it was not the defense's burden to disprove an element.  *Id.*

Additionally, given that the Court had ruled that the lesser-included offense instruction would exclude the government's primary allegation of wrongdoing—the roving patrol allegations—the defense was restrained from relying on the lesser-

---

doubt that a rational jury would have found the defendant guilty absent the error.'").
But, regardless of which standard applies, the government cannot meet its burden to
show that the error was harmless.

18

included offense in its closing argument.  The defense's strategic choices in its arguments, given the constraints imposed by the Court's erroneous instruction, does not shed light on the counterfactual scenario of how the trial would have proceeded if the full lesser-included instruction were provided.  Given that the jury specifically asked if it could consider the roving patrol allegation as part of the lesser-included offense, even though the Court's instruction said that it could not, the government cannot carry its burden to prove that the precise error the jury pointed out in its note was harmless.

### III.  CONCLUSION

For the foregoing reasons, the Court should order a new trial.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  March 28, 2024          By   */s/ Joshua D. Weiss*
                                 _____
                                 GEORGINA WAKEFIELD
                                 GABRIELA RIVERA
                                 JULIA DEIXLER
                                 JOSHUA D. WEISS
                                 Deputy Federal Public Defenders
                                 Attorneys for JERRY NEHL BOYLAN

19